ROBERT R. GARRETT V. STATE OF NEBRASKA.

FILED APRIL 11, 1929. No. 26591.

*Mitchell & Gantz,* for plaintiff in error.

*O. S. Spillman, Attorney General, Lloyd Dort* and *P. E. Romig, contra.*

Heard before ROSE, DEAN, GOOD, THOMPSON and DAY, JJ., and REDICK and SHEPHERD, District Judges.

SHEPHERD, District Judge.

This is a homicide case, brought here on petition in error from Box Butte county. Plaintiff in error was charged with shooting and killing William Kinsley, maliciously and with premeditation. The case was tried in February of 1928 and resulted in a verdict of murder in the first degree, duly rendered on the 16th day of that month and year. Sentence was to imprisonment for life and was pronounced on the 21st day of the same month.

The said William Kinsley had been riddled with shot and instantly killed as he passed before a window in his farm house about sixteen miles northwest of Alliance on the evening of the 26th day of November, 1927. Mrs. Clara Garrett testified upon trial that she was close to the deceased and that the shot that killed him came through the described window at his back. She testified further that she immediately looked through the window and saw the plaintiff in error outside, gun in hand, and that after pointing said gun at her and making her come out and go with him the latter told her that it was he who had killed Kinsley.

The plaintiff in error took the stand in his own behalf and denied any part in the shooting, denied that he was at the place where the shooting occurred, and denied the story of Mrs. Garrett *in toto.* He also presented an alibi sworn to by many witnesses in his behalf.

The assignments of error are numerous, relating chiefly to rulings of the court upon trial. Complaint is also made that the verdict and judgment are not sustained by the evidence and by the law, but are alike contrary to the law and to the evidence, and that the evidence disclosed no mo-

tive for the crime. A careful survey of the record leads us to conclude that no prejudicial error was committed, save in one instance on the reception of evidence.

The plaintiff in error made timely objection to the testimony of Clara Garrett. The ground of his objection was that she was his wife, both on the date of the commission of the crime and on the date of the trial, whereby she was precluded by law from testifying against him. The language of section 1 (8837) ch. 25, Laws 1925, is as follows: "The husband can in no case be a witness against the wife, nor the wife against the husband, except in a criminal proceeding for a crime committed by the one against the other."

The record discloses that Clara Garrett was married to the plaintiff in error on the 26th day of February, 1908, and had lived with him for many years, bearing him two daughters. She began an action against him for a divorce on the 13th of October, 1926, and service of summons was perfected in that case on the 19th day of October of that year; and on the 19th day of April, 1927, trial was had and a decree of divorce was formally signed. Said decree was filed on the 21st, but it plainly appears that the case was heard, tried and decided on the 19th. Afterward, on the 26th day of November, 1927, as hereinbefore stated, the killing took place.

If the decree in said divorce case was void as rendered before the court had jurisdiction to render it, that is to say, within a period of time less than six months from and after the date on which service of summons was perfected, the objection to the reception of said evidence must be held to have been well taken, and in such case the judgment of the district court must be reversed, unless the divorce law is unconstitutional, or the divorce not subject to collateral attack; for the testimony of Clara Garrett was material and damaging, and must have had its influence upon the jury.

There is, we think, no escape from the conclusion that the divorce was granted a day before it could have been

legally granted. When the statute says "months" in a case
like this it means calendar months. *Brown v. Williams,* 34
Neb. 376. And in a case of this character, where a certain
period of time must elapse before the court is vested with
power to act, the rule is to exclude the first day and include
the whole of the last in said period. It is true that this
court has held in connection with the service of summons
in justice of the peace courts that the three days' notice
required before the defendant is obliged to appear is satis-
fied by excluding the day of service and including the third
day therefrom, so, for example, that when summons is
served on the 6th the trial may be had upon the 9th. But
the time in question in this case is fixed by special statute,
not by the Code, and the Code must yield to the special
statute. *Calland v. Wagner,* 86 Neb. 755; Comp. St. 1922,
sec. 9525. The court expressly said in the case last above
cited that section 895 of the Code (Comp. St. 1922, sec.
9521) "is general in its application, and does not control
where there is a special provision in a statute directing
the method of computing time." The special provision un-
der consideration directed that the justice must render
judgment "either at the close of the trial, * * * or on
or by the fourth day thereafter, both inclusive;" and the
opinion goes upon the theory of strict construction in
which each and every word of the law is to be given due
meaning and effect. Section 9525, above cited, is in part
as follows: "Where, by general or special statute, a civil
action, legal or equitable, is given and the mode of pro-
ceeding therein is prescribed, this Code shall not affect the
proceedings under such statute, until the legislature shall
otherwise provide."

Section 1 (1520) ch. 63, Laws 1925, provides: "That
no suit for divorce shall be heard or tried for a period of
six (6) months after service has been had or perfected."
This is a special statute and the precise question as to the
proper computation of time where the provision is of this
character was determined in *McGinn v. State,* 46 Neb. 427,
in which the court held, construing the provision of the law

to the effect that an enactment of the legislature should only become operative three months after the date of the adjournment of that body, that an amendment by the legislature of 1893 took effect on the 9th day of July following, said legislature having adjourned on the 8th day of April of that year. In an elaborate opinion filed in that case Judge Post said:

"The authorities are not, as will be observed, harmonious upon the question whether the first day—in this instance, the day of the adjournment of the legislature—is to be included in the prescribed period. That question is, however, not an open one in this state. Indeed, it is clear that section 895 of the Code of Civil Procedure, providing that 'the time within which an act is to be done as herein provided shall be computed by excluding the first day and including the last,' was intended to establish a uniform rule, applicable to the construction of statutes as well as to matters of practice. * * * It follows that the period of three calendar months after the adjournment of the legislature of 1893 terminated at midnight of the 8th day of July of that year."

It is obvious from this authority that the six months waiting period provided in the divorce statute did not end until midnight of April 19, 1927, and that the court had no power or authority to hear, try or determine the divorce case of Garrett v. Garrett on that day. And just as certainly, since the court had no power or authority to hear and determine said case and to enter the decree, its action in that behalf was without jurisdiction, and a mere nullity. To the same effect is *Johnston v. New Omaha Thomson-Houston Electric Light Co.*, 86 Neb. 165. It follows that Clara Garrett was the wife of the plaintiff in error at the time of the trial and that her testimony should not have been received over his objection.

Supporting this conclusion is the case of *Pelton v. Drummond*, 21 Neb. 492. The following is the first paragraph of the syllabus of said case: "In an application for license to sell intoxicating liquors under the provision of chapter

50 of the Compiled Statutes, it is necessary to give at least two weeks' notice of the same in the manner provided by law, and where the notice is published in a newspaper, the county (city or village) board has no authority to take any action thereon until the expiration of the time during which the notice must be given. Any action taken by them before the expiration of the two weeks will be void." The action of the district court in hearing the divorce case of Garrett v. Garrett, and entering a decree therein, was entirely without authority and its decree was void.

Where a special statute prohibits a court, a judge or a commission from taking action before the expiration of a certain time, or before doing a certain thing, such court, judge or commission is precluded to that degree from proceeding in that behalf. Such was the holding in *Hurford v. City of Omaha,* 4 Neb. 336, in which the court said that, because it was provided by statute that the grade could not be changed until the damages were assessed and tendered, the proceedings of the city council changing the grading of a street without such preliminary assessment and tender was altogether void.

The doctrine finds further support in 15 R.C.L. 845, sec. 319, which is to the effect that, where a statute prohibits a judge or court from trying a case before a certain time, and the court or judge tries said case before the end of the time so limited, the decree or judgment therein rendered is void and may be attacked collaterally. A decree of court which is void for want of jurisdiction may be attacked in any proceeding in which any person seeks to assert a right under it. It may be attacked whenever it is sought to be enforced, or in any suit in which its validity is drawn in question. 15 R. C. L. 841, sec. 316.

We are not persuaded by the authorities cited by the state in its brief to the effect that in case of irregularity in service of summons, where the service is personal, no advantage can be taken of such irregularity except in the direct proceeding. The decision in these cases goes upon the theory that the provisions concerning service are directory

merely, not mandatory, and that the mistake or irregularity does not go to the matter of jurisdiction. In the case at bar, however, the requirement of the statute is, as we have seen, jurisdictional, and the failure to observe that requirement results in lack of power and authority.

Section 1 (1520) ch. 63, Laws 1925, is a special statute and it must be strictly construed. 25 R. C. L. 1057, sec. 282. The following is from said section: "A statute creating a new summary jurisdiction unknown to the common law should be strictly construed; nothing is to be presumed that is not expressly given by the act. A statute is not to be given a construction at variance with established rules of procedure unless the intention of the legislature is apparent. Where a proceeding is established by statute which differs radically from that of the common law it must be strictly pursued." It is evident that the legislature intended to make, and did make, the statute in question a limitation upon the power of the courts in the awarding of divorces.

The state has an interest in the marriage relation; it is a party in a divorce case. It is a general principle in the law of divorce that courts possess only such powers as are conferred by statute, and may justify their proceedings and judgments only by reference to the statutes. Because of this and because of the interest of the state referred to, our legislature has made various changes in the law for the purpose of conserving and maintaining that relation. It is common knowledge that the tendency among lawmakers has been to discourage divorce and to protect marriage.

This is to be considered in connection with the problem of ascertaining what the intention of the legislature was in providing that no divorce case shall be heard or tried for a period of six months after the completion of service of summons. It was undoubtedly to give parties time to recover from anger, to recall affection, to remember benefits, to reflect on the well-being of offspring, and to consider from the standpoint of personal duty and responsibility. Immediate trial and preparation for trial are inherently

such as to keep alive resentment and develop new animosity, hence the waiting time prescribed by the lawmaker in order that the relation in which the state is so vitally interested may not be terminated too easily and too speedily.

The provision is in harmony with the tendency of modern thought in connection with divorce. To set it aside by decree of court, or to shorten the time prescribed, would be to go contra to both the letter and spirit of the legislative enactment; it would be to judicially legislate in a fashion most unwarranted. And while it is true that courts are possessed of certain equity powers that legislatures cannot take away or control, instanced and announced in *Lacy v. Zeigler,* 98 Neb. 380, the situation in the case at bar is not such as to justify the exercise of such powers.

It is probably true that the legislature did not anticipate the question that arises in this case. Lawmaking is, indeed, a function for the wisest and most experienced—for the legislator versed in the theory of laws and able to forsee their practical operation. Special statutes have their reflex action as well as their remedy for the evil at which they are aimed. It probably did not enter the mind of the legislature of 1925 that this particular provision of the divorce law would arise to shield a murderer, as might happen, or to prevent the state from showing the facts against one accused of crime. But with this consideration we have naught to do. Whether or not the provision is a wise one is not for us to decide. Where a provision is plain and unambiguous in its terms and not susceptible of more than one construction, courts are not concerned with the consequences that may result therefrom but must enforce the law as they find it. 25 R. C. L. 1017, sec. 255; *Coffin v. Rich,* 45 Me. 507, 71 Am. Dec. 559; *Henry & Coatsworth Co. v. Evans,* 97 Mo. 47.

It remains to say that the law is not unconstitutional. Counsel do not favor the court with authorities sustaining the state's contention in this respect, other than by a bare recital of sections 3, 13, and 25, art. I of the state Constitu-

tion. Nor is their somewhat perfunctory argument persuasive. Statutes similar in principle have in several instances been upheld by this court. *Schmidt v. Boyle,* 54 Neb. 387; *Reed v. Reed,* 70 Neb. 775; *Minor v. Morgan,* 83 Neb. 400. The provision questioned is neither arbitrary nor unreasonable. Under the police power of the state it is not within the inhibition of the fundamental law.

We repeat that, where power is lacking and where the judgment of the court is without jurisdiction and void, no change of status can result from such judgment.

The language quoted from 25 R. C. L. 1057, sec. 282, does not permit us to speculate or to attempt to find a way around. The law is plain and it must be enforced. The objection made by the plaintiff in error was well taken and the testimony of Clara Garrett should have been excluded. The failure of the trial court to sustain the objection was reversible error.

The judgment in the case is reversed and the case is remanded for new trial in accordance with this opinion.

REVERSED.

ROSE, J., dissenting.

In my opinion the decree in the divorce case of Garrett v. Garrett was evidence of the wife's divorce when introduced in the present prosecution of her former husband for murder. For the purpose of granting the wife a divorce the district court was a court of general jurisdiction. In the suit for divorce, the record showed that the district court had jurisdiction of both husband and wife and of the subject-matter of the suit for divorce. In connection therewith the decree of divorce, when entered on the journal of the district court, was, in collateral proceedings, its own evidence of the district court's jurisdiction to sever the marriage relation of the Garretts. If the decree was in fact entered a day too soon, an attack on that ground was available to defendant on appeal only. There was no appeal from the decree granting defendant's former wife a divorce. The husband and the wife were in fact separated when she testified against him. To each other the relation

of husband and wife did not exist. The statute requiring an interval of six months between the service of summons in the divorce case and the granting of a decree of divorce therein had served its purpose. The judicial interpretation that excludes the decree of divorce as evidence in the prosecution for murder required a resort to technicalities that defeat the purpose of the criminal law. In my view of the record, the conviction of defendant in the prosecution for murder should not be set aside on the ground stated in the opinion of the majority.

GOOD, J., concurs in dissent.